UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS DANIELS,<br><br>    Plaintiff,<br><br>vs.<br><br>S. REED, Chief Deputy Warden, *et al.*,<br><br>    Defendants. | Case No. 1:13-cv-00416-RRB<br><br>**<u>DISMISSAL ORDER</u>** |

Curtis Daniels, a state prisoner appearing *pro se* and *in forma pauperis*, filed a civil rights action under 42 U.S.C. § 1983, against several correctional officers.[1] Curtis' Complaint arises out of his incarceration by the California Department of Corrections and Rehabilitation ("CDCR") at the California Correctional Institute, Techachapi ("CCI").

## I.    SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] In addition to S. Reed, the Chief Deputy Warden, Daniels has named: P. Matzen (Facility Captain), T, Haak (Facility Lieutenant), M. Dailo (Correctional Lieutenant), B. Skaggs (Correctional Lieutenant), B. Wedertz (Correctional Sergeant); M. Wurtz (Correctional Officer); G. Eberle (Correctional Officer), T. Turmezl (Institutional Gang Investigator); I. Alomari (Appeals Coordinator); K. Sampson (Appeals Coordinator); the Warden, CCI; the Director, CDCR; and Does 1 to 25.

[2] 28 U.S.C. § 1915A(a).

"frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[3] Likewise, a prisoner must exhaust all administrative remedies as may be available,[4] irrespective of whether those administrative remedies provide for monetary relief.[5]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[7] Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8]

---

[3] 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4] 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (exhaustion of administrative remedies must be completed before filing suit).

[5] *See Booth*, 532 U.S. at 734.

[6] Fed. R. Civ. P. 8(a)(2).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[8] *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[9] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## II.   GRAVAMEN OF COMPLAINT

Daniels alleges that in May 2008 he was questioned about a name change and identity theft and, when he refused to respond to the questions, was placed in administrative segregation in the Special Housing Unit ("SHU").[13] Subsequently, in October 2008, Daniels was again sent to the SHU because, according to Daniels, he was falsely validated as an gang member.

In March 2012 Daniels was issued a CDC-115 Rules Violation Report ("RVR") for refusing to share a cell, the adjudication of which resulted in the loss of 90 days of good time. Daniels further alleges that the RVR was issued because he refused to allow

---

[9] *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[10] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[11] *Id.*

[12] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[13] Although it is not entirely clear from the Complaint, it does not appear that Daniels seeks relief in any form as a result of this SHU placement.

Correctional Sergeant Wurtz to orally copulate him. Daniels also alleges that his administrative appeals from the RVR adjudication were either lost or improperly processed, resulting in a denial of due process.

Daniels also alleges in general terms without specifics that some of the Defendants failed to curb a pattern of staging gladiator-style fights in the SHU. Notably, despite the fact that Daniels has alleged significant details concerning his other allegations, Daniels has not alleged that he was forced to engage in any of these so-called gladiator-style fights.

Finally, Daniels alleges that the acts of the Defendants were part of some grand conspiracy.

Based upon those facts Daniels alleges fifteen (15) causes of action.

First Cause of Action: Violation of his First Amendment right of association.

Second Cause of Action: Violation of his First Amendment right of free speech.

Third Cause of Action: Violation of his First Amendment right by retaliation for changing his name.

Fourth Cause of Action: Violation of his First And Fourteenth rights to associate with member of his own racial group.

Fifth Cause of Action: Cruel and unusual punishment/deliberate indifference to risk of retaliation in violation of the Eighth Amendment.

Sixth Cause of Action: A general conspiracy among the Defendants to deprive him of his constitutional protected rights.

Seventh Cause of Action: Misclassification as a member of gang and housing in a SHU constituted cruel and unusual punishment in violation of the Eighth Amendment.

Eighth Cause of Action: A conspiracy to frame Daniels by false RVR's and denial of his proper avenues of appeal.

Ninth Cause of Action: Deliberate indifference to inhumane conditions in the SHU in violation of the Eighth Amendment.

Tenth Cause of Action: Denial of equal protection in violation of the Fourteenth Amendment.

Eleventh Cause of Action: Denial of equal protection in violation of state law.

Twelfth Cause of Action: Violation of an undefined state law liberty interest in violation of the Fourteenth Amendment.

Thirteenth Cause of Action: Retention in the SHU beyond the initial 90 days violated his due process rights under the Fourteenth Amendment.

Fourteenth Cause of Action: Violation of the mandatory duties imposed by California state law.

Fifteenth Cause of Action: Failure to properly train and supervise.

Daniels asks for: (1) declaratory relief that the acts of the Defendants violated his rights under the Constitution and state law; (2) a preliminary and permanent inunction prohibiting retaliation and reprisals for his refusal to accept the cell assignment; (3) compensatory damges of $500/day for the loss of good time; (4) compensatory damages for mental anguish and stress; (5) punitive damages; and (6) costs of suit.

**III.     DISCUSSION**

Daniels' claims can be grouped into five (5) categories: (1) the RVR; (2) the retaliation claim; (3) his validation as a gang member; (4) his confinement to a SHU; and (5) state-law claims. These will be addressed *in seriatim*.

**A.     *Rules Violation Report***

Although it appears in the body of the Complaint that Daniels may contend that the RVR resulted in his continued confinement in the SHU, the RVR itself imposed a loss of good-time credits, not a further period of incarceration in the SHU. Thus, with respect to the RVR the Court must first address the question of whether this action is properly brought under § 1983. For the following reasons, the Court holds that it is not.

Persons subject to state custody generally "have two potential avenues to remedy violations of their federal constitutional rights: a habeas petition under 28 U.S.C. § 2254, and a civil suit under 42 U.S.C. § 1983."[14] In *Preiser,* the Supreme Court addressed "the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus,"[15] and held that § 1983 implicitly excludes from its coverage claims that lie "within the core of habeas corpus."[16] Thus, a person who is in state custody may not use § 1983 to challenge "the very fact or duration of . . . confinement" by seeking "a determination that he is entitled to immediate release or a speedier release from that imprisonment"—for

---

[14]   *Osborne v. Dist. Attorney's Office,* 423 F.3d 1050, 1053 (9th Cir.2005) (citing *Heck v. Humphrey,* 512 U.S. 477, 480 (1994)).

[15]   *Prieser v. Rodriguez*, 411 U.S. 475, 500 (1973).

[16]   *Id.* at 487–88.

example, an injunction requiring prison officials to grant good-time credits that would shorten his prison term.[17] In *Heck,* the Court elaborated on the exception set forth in *Preiser,* holding that a state prisoner may not maintain a § 1983 claim for damages if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" with respect to a prior judgment that has not been nullified previously.[18]

One of the preconditions to bringing a federal *habeas* petition is that this Court may not consider claims that have not been fairly presented to the state courts.[19] Unexhausted claims must be dismissed.[20] Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[21] Thus, Daniels has failed to fully exhaust his state court remedies by presenting his claim to the highest state court,[22] i.e., the California Supreme Court.

---

[17] *Id.* at 499–500; *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002) ("it has been clear for over thirty years that a state prisoner seeking injunctive relief against the denial or revocation of good-time credit must proceed in habeas corpus, and not under § 1983.").

[18] *Heck,* 512 U.S. at 484; *see Edwards v. Balisok*, 520 U.S. 641, 644, 646–48 (1997) (holding that a due process claim challenging disciplinary proceeding that necessarily implies the invalidity of the deprivation of good time credits is not cognizable under § 1983).

[19] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[20] *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

[21] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[22] *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir.2003) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

Because Daniels is proceeding *pro se* and this Court must liberally construe *pro se* pleadings,[23] normally this Court would simply dismiss with leave to amend providing Daniels the opportunity to cure the defect, i.e., refile as a petition for *habeas* relief. In this case, however, it is obvious from the Complaint that Daniels has not sought relief in any form in the California State Courts. Thus, as a petition for federal *habeas* relief, because he has not exhausted any of his claims, it is premature and must be dismissed.[24] Dismissal will, however, be without prejudice to Plaintiff filing a petition for federal *habeas* relief under 28 U.S.C. § 2254 or § 2241, as appropriate.

   B.   *Retaliation Claim*

Daniels contends that the RVR was in retaliation for his refusal to orally copulate Correctional Sergeant Wurtz. The insurmountable problem that Daniels faces with respect to this claim is that, as a threshold issue, Daniels must establish that the RVR was false. As explained in the previous section, that question is not only not properly before this Court, but has not yet been resolved in favor of Daniels. Accordingly, Daniels' retaliation claim is premature and must be dismissed without prejudice.

---

   [23] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

   [24]  As a habeas petition it would consist of solely unexhausted claims, not *both* exhausted and unexhausted claims. Thus, the stay and abey procedure under which the court dismisses the unexhausted claims and holds the exhausted claims in abeyance pending exhaustion is inapplicable. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Pliler v. Ford*, 542 U.S. 225, 230 (2004) (citing *Rose*).

### C.   *Validation as a Gang Member*

Daniels appealed from his classification as a gang member. Daniels' request that the classification be looked into was granted at the Second Level of administrative review.

> **APPEAL ISSUE:** CUSTODY/CLASSIFICATION
> The appellant documents that he does not agree with the Institutional Classification Committee's action dated September 12, 2012. The appellant was retained in the Security Housing Unit (SHU) under falsified documentation conducted by California Department of Corrections and Rehabilitation's (CDCR) staff. The appellant states he has advised CDCR staff that he is not an associate of any gang.
> The appellant is requesting an investigation into him being retained in SHU under false documents.
> The appellant is requesting compensation for pain, suffering, and mental anguish.
> **APPEAL RESPONSE:**
> All relevant documents and information submitted in writing have been carefully reviewed and considered. A thorough review has been conducted and evaluated in accordance with departmental policies and institutional procedures.
> On October 16, 2012, the appellant was interviewed by T. Miner, Correctional Counselor II (CC-II).
> The appellant had nothing new to add to his appeal.
> The appellant's request for an investigation into him being retained in SHU under false documentation was reviewed by CC-II Miner; this portion of the appeal is GRANTED. It was revealed that the appellant has been validated as an associate of the Black Guerilla Family per the CDCR-128B-2, *Chrono,* dated February 17, 2009.
> As stated in the CDCR-128G, *Classification Chrono,* dated September 12, 2012, appellant's Central File contains a CDCR-128B-2 dated February 17, 2009, validating the appellant as a prison gang member. The date of the most recent source document listed on the CDCR-128-B2, which was used in the validation process is within the past six years indicating that appellant is currently an active associate of the Black Guerilla Family Prison Gang. The appellant's inactive/active review date is August 18, 2014. Upon that date, the Institutional Gang Investigator will conduct a review and submit a finding to Office of Correctional Safety to determine if the appellant is inactive or active within the prison gang. If the appellant is determined to be active another six year review period will begin. If the appellant is determined to be inactive with the prison gang the appellant's case factors will be

> presented to the Departmental Review Board (DRB) to determine the appellant's placement according to his case factors, could be released to General Population (GP).
> In accordance with California Code of Regulations (CCR), Title 15, Section 3378 *(d,)* which states in part, an inmate house in the GP as a gang member or associate may be considered for review for inactive status when the inmate has not been identified as having been involved in the gang for a minimum of two year. The appellant is not on a GP Facility and falls under CCR, Title 15, Section 3341.5 (c) (A) (2), which states in part, *a validated prison gang member or associate is deemed lo be a severe threat to the safety of others or the security oft he institution and will be placed in a SHU for an indeterminate term.*
> Additionally, CCR, Title 15, Section 3023, *Gang Activity,* which states in part:
> > *(a)   Inmates and parolees shall not knowingly promote, further or assist any gang as defined in Section 3000.*
> > *(b)   Gangs, as defined in Section 3000, present a serious threat lo the safety and security of California prisons.*
> > *(c)   For the purpose of specific gang participant identification. the department categorizes gangs into prison gangs and disruptive groups as defined in Section 3000.*
> The appellant can debrief to be released from SHU, or wait until his inactive review and if it is determined that he was inactive in the prison gang for six years and the DRB releases him from his indeterminate SHU term, then he will be released from SHU.
> The appellant has not proven any of the documentation used for his validation is false; therefore, the appellant will remain Indeterminate SHU.
> The appellant's request for monetary compensation for his alleged pain and suffering or mental anguish will not be addressed as it is not within the scope of the appeal process.
> Based on the above, this appeal is **GRANTED.**[25]

The Ninth Circuit has made clear that due process requires that validation as a gang member by prison authorities must be supported by "some evidence."[26]

> Some evidence review requires us to ask only whether there is *any evidence* in the record that could support the conclusion. This test is

---

[25] Docket 1, pp. 53–54 (emphasis in the original).

[26] *Castro v. Terhune*, 712 F.3d 1304, 1313–14 (9th Cir. 2013).

minimally stringent. Accordingly, we do not examine the entire record, independently assess witness credibility, or re-weigh the evidence. Evidence only must bear some indicia of reliability to be considered some evidence. Moreover, evidence may qualify as some evidence, even if it does not logically preclude[ ] any conclusion but the one reached.[27]

Without describing that evidence, Daniels alleges that the evidence supporting his classification as a gang member was unreliable and exaggerated. These conclusory allegations standing alone are insufficient.[28] On the other hand, the evidence referred to in the Second Level Appeal Response upon which the result depended, i.e., the CDCR-128G, *Classification Chronos*, is not before the Court. Accordingly, at this point in the proceedings the Court cannot conclusively determine whether the "some evidence" standard has been met.[29]

Although it is highly unlikely that Daniels can truthfully plead facts sufficient to warrant a finding that his classification as a gang member is invalid, at this stage of the pleadings the Court cannot definitely and unequivocally hold that he cannot.[30] Accordingly, Daniels will be granted leave to file an amended complaint. In so doing, however, Daniels is reminded that he has a high hurdle to surmount.[31] The Court also notes that Daniels'

---

[27] *Id.* at 1314 (internal quotation marks and citations omitted) (emphasis in the original); *see Bruce v. Ylst*, 351 F.3d 1283, 1287–88 (9th Cir. 2003).

[28] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[29] Resolution of this issue is further complicated by the fact that, while Daniels denies being a member of the BGF, he does apparently admit that he is a "Blood," also a gang.

[30] *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").

[31] *See Castro*, 712 F.3d at 1314–15. In particular, the Court notes that Daniels alleges that the evidence relied upon was false or fabricated. In amending his complaint,

gang classification was scheduled for review in August 2014. In amending his Complaint, Daniels should also address the effect, if any, that this review has.

### D. SHU Confinement

The Due Process Clause, standing alone, does not confer a liberty interest in prisoners being confined in the general prison population instead of administrative segregation.[32] With respect to liberty interests arising under state law, the liberty interest by prison regulations is determined by focusing on the nature of the deprivation.[33] Liberty interests affected by prison regulations are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[34]

The Court notes that, with the exception of the unique conditions existing at the Pelican Bay Prison as applied to mentally ill inmates or those inmates at a particularly high risk for suffering very serious or severe injury to their mental health,[35] no federal court has held that administrative segregation in a California prison SHU imposes an atypical or significant hardship on a prisoner sufficient to violate the Eighth Amendment.

---

Daniels is reminded that this Court will not re-weigh the evidence nor assess its validity. The sole issue before this Court is whether the evidence, accepted as true, is sufficient to support Daniels' validation as a gang member; nothing more.

[32] *See Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983).

[33] *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995).

[34] *Id.* at 484.

[35] *Madrid v. Gomez*, 889 F. Supp. 1146, 1155, 1228–29 (N.D. Cal. 1995); *see Griffin v. Lopez*, 741 F.3d 10, 13–14 (9th Cir. 2014) (discussing *Madrid*).

The claims attacking Daniels' confinement in the SHU must be dismissed.

### E.    State Law

To the extent that Plaintiff alleges that the actions of Defendants violated state law, 42 U.S.C. § 1983 does not provide a cause of action for those claims.[36] In addition, with respect to his state-law claims a plaintiff must show compliance with the presentment requirements of the California Tort Claims Act.[37] It is clear from the Complaint that Daniels has not presented his claims to the California courts as required. Consequently, those claims must also be dismissed.

## IV.   ORDER

Based upon the foregoing, the Court hereby **ORDERS** as follows:

1.    To the extent that Daniels challenges the Rules Violation Report, it is **DISMISSED** without prejudice to bringing that claim in a *habeas corpus* proceeding under 28 U.S.C. § 2254 or 28 U.S.C. § 2241, as appropriate.

2.    To the extent that Daniels is challenging his validation as a gang member, that claim is **DISMISSED** with leave to amend. In amending, Daniels must limit his action to the official(s) responsible for making the decision validating him as a gang member. In addition, if in his possession, custody, or control, Daniels must attach to his complaint the

---

[36] *Loftis v. Almagar*, 704 F.3d 645, 647 (9th Cir. 2012) (*citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

[37] *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 627 n.4 (9th Cir. 1988).

applicable CDCR-128G, *Classification Chronos* addressing his validation as a gang member.

      3.      All other claims are hereby **DISMISSED**, without leave to amend.

      4.      Daniels must file his Amended Complaint consistent with this Order on or before **December 22, 2014**.

      **IT IS SO ORDERED** this 14th day of November, 2014.

                                       S/ RALPH R. BEISTLINE
                                       UNITED STATES DISTRICT JUDGE